UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| DALAWRENCE RAINES, | § | |
| | § | |
| Petitioner, | § | |
| VS. | § | CIVIL ACTION NO. 2:14-CV-330 |
| | § | |
| WILLIAM STEPHENS, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner is an inmate in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID") and currently is incarcerated at the McConnell Unit in Beeville, Bee County, Texas. Proceeding *pro se*, petitioner filed an original habeas corpus petition pursuant to 28 U.S.C. § 2254 on July 24, 2014 (D.E. 1).[1] Petitioner claims that his right to due process was violated in a disciplinary hearing held at the McConnell Unit which resulted in the imposition of punishment. Respondent filed a motion for summary judgment on December 19, 2014 (D.E. 15) to which Petitioner did not respond. As discussed more fully below, it is respectfully recommended that Respondent's motion for summary judgment be granted and Petitioner's application for habeas corpus relief be denied. It is further recommended that any request for a Certificate of Appealability be denied.

---

[1] Petitioner stated under penalty of perjury that he placed his petition in the prison mail system on July 24, 2014 and it is considered filed as of that date. *See Spotville v. Cain*, 149 F.3d 374, 376 (5th Cir. 1998) and Rule 3, Rules Governing Section 2254 Cases.

## JURISDICTION

Jurisdiction and venue are proper in this court because Petitioner is incarcerated in the Corpus Christi Division of the Southern District of Texas. 28 U.S.C. § 2241(d); *Wadsworth v. Johnson*, 235 F.3d 959 (5th Cir. 2000).

## BACKGROUND

Petitioner currently is serving a fifteen-year sentence for possession of cocaine with intent to deliver while in a drug-free zone (Mot. for Sum. Jmt., Ex. A; D.E. 15-2 at 3). He does not complain about his holding conviction, but challenges the results of a disciplinary hearing. In disciplinary case number 20140182432, Petitioner was accused and found guilty of refusing to move out of his cell to his new housing assignment. (DHR at 1; D.E. 16-2 at 4).[2] During the investigation of the offense Petitioner stated that he did not get along with the offenders in the building to which he was being moved (DHR at 3; D.E. 16-2 at 5). Petitioner did not make a statement at the hearing (DHR at 7; D.E. 16-2 at 9).

Petitioner was found guilty based on the charging officer's report and the fact that Petitioner did not present any evidence. He was punished with thirty days special cell restriction, the loss of forty-five days of commissary and recreation privileges, a reduction in Line Class from L2 to L3, and the loss of twenty days of good time (DHR at 1; D.E. 16-2 at 3).[3]

---

[2] "DHR" refers to the Disciplinary Hearing Record located at D.E. 16-2. "DGR" refers to the Disciplinary Grievance Record, located at D.E. 16-1.
[3] Petitioner alleged that he lost 180 days of good time, but both the written record and the digital recording of the hearing show that he lost twenty days of good time.

Petitioner filed a Step 1 grievance on March 3, 2013 in which he argued that he did not receive notice twenty-four hours before the hearing and that the punishment assessed was too severe (DGR at 1; D.E. 16-1 at 3). Petitioner received a response dated April 2, 2014, stating that there were no procedural errors and the punishment imposed was within the established guidelines (DGR at 2; D.E. 16-1 at 4). Petitioner filed a Step 2 grievance on April 16, 2014, contending that (1) the issues presented in the Step 1 grievance were not addressed; (2) there was insufficient evidence to substantiate a finding of guilt; (3) the punishment imposed was too severe; (4) TDCJ-CID violated policies and procedures outlined in the classification plan; (5) Petitioner and other inmates suffered retaliation when they filed grievances and (6) Captain Gonzalez violated court-ordered injunctions as well as state and federal laws (DGR at 3-4; D.E. 16-1 at 5-6). Petitioner received a response on April 24, 2014 telling him that the disciplinary charge was appropriate for the offense and the guilty verdict was supported by a preponderance of the evidence. In addition, due process requirements were satisfied and the punishment was within agency guidelines (DGR at 3-4; D.E. 16-1 at 4-5).

Petitioner argues in his habeas petition that (1) he received ineffective assistance of counsel at the hearing, because his "paid attorney" did not object to anything at trial on his behalf; (2) he was not allowed to confront his accuser and (3)"the cops searched without a probable cause to search." (D.E. 1 at 6-7).[4] In Respondent's motion for

---

[4] These allegations are puzzling because they do not seem to correspond to the box checked on page two of his application, indicating that he was challenging the results of a disciplinary proceeding, or the line in his application where he provided the number of the disciplinary hearing (D.E. 1 at 2, 5). However, because Petitioner did indicate that

summary judgment, he contends that Petitioner's claim is unexhausted and otherwise fails to state a claim.

## APPLICABLE LAW

### A. Exhaustion and Procedural Bar

Respondent argues that Petitioner did not properly exhaust all of his claims at the administrative level and because it is now too late for him to do so, the unexhausted claims are procedurally barred. Before a federal court can grant an application for writ of habeas corpus, an applicant must have exhausted the remedies available in the courts of the state. 28 U.S.C. § 2254(b)(1). "To exhaust available state remedies, a habeas petitioner must fairly apprise the highest court of his state of the federal rights which were allegedly violated." *Shute v. State of Texas*, 117 F.3d 233, 237 (5th Cir. 1997)(internal quotations omitted). But, because Texas state courts do not review claims of lost good time or other results of prison disciplinary proceedings, a petitioner is required to pursue his claims through the administrative appeals process rather than state court. *Ex Parte Palomo*, 759 S.W.2d 671, 674 (Tex. Crim.App. 1988); *Ex parte Brager*, 704 S.W.2d 46 (Tex. Crim. App. 1985). The exhaustion requirement is mandatory and the administrative grievance procedure must be completed before a prisoner can file a law suit in federal court. *Underwood v. Wilson*, 151 F.3d 292 (5th Cir. 1998).

---

he was challenging the disciplinary hearing, and because he did not respond to the motion for summary judgment which addresses the hearing, it will be assumed that the disciplinary hearing is the basis of his claim.

In addition, a federal court is barred from reviewing a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). In order to overcome the procedural bar, a petitioner must show either cause and prejudice for the error, or that failure to hear the claims would result in a miscarriage of justice. *Sawyer v. Whitley*, 505 U.S. 333, 338-339 (1992). In order to show a "miscarriage of justice," the petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

The Fifth Circuit has not addressed the applicability of the procedural bar to habeas claims involving prison disciplinary cases. However, the Seventh Circuit has held that the final reviewing authority in the prison grievance process is the administrative equivalent to the state's highest court and that habeas claims based on disciplinary cases could be procedurally defaulted in the absence of cause and prejudice. *Moffat v. Broyles*, 288 F.3d 978, 981-982 (7th Cir. 2002). At least one Texas district court has adopted the reasoning in a published opinion. *Moffatt v. Director*, 390 F.Supp.2d 560, 562-563 (E.D. Tex. 2005). In the absence of authority to the contrary, the reasoning of those cases will be applied here.

Respondent in this case argues that Petitioner did not exhaust his administrative remedies in regard to his claim because in neither his Step 1 nor his Step 2 grievance did he raise the arguments that his counsel substitute was ineffective or argue that he was not allowed to confront the witnesses against him. A review of the disciplinary grievance

records show that Respondent is correct. Petitioner did not raise any of the claims he brings in his habeas action in his grievances and he cannot do so now because the time period for filing a grievance has passed.[5] Accordingly, Petitioner's habeas corpus claim should be dismissed as unexhausted and procedurally barred.

## B. Due Process Rights

In the alternative, the merits of Petitioner's claims will be addressed. *See* 28 U.S.C. § 2254(b)(2)(application for habeas corpus may be denied on the merits, notwithstanding failure to exhaust state court remedies). In order to be granted a writ of habeas corpus, a petitioner must show that he is in custody in violation of the Constitution, laws or treaties of the United States. In *Sandin v. Conner*, 515 U.S. 472, 483-484 (1995), the U.S. Supreme Court described the limited instances in which a prison inmate can make out a claim that a liberty interest has been taken without due process.

> The time has come to return to the due process principles we believe were correctly established and applied in [*Wolff v. McDonnell*, 418 U.S. 539, 94 (1974)] and [*Meachum v. Fano*, 427 U.S. 215 (1976)]. Following *Wolff*, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

---

[5] *See* TDCJ-CID Offender Orientation Handbook, https://www.tdcj.state.tx.us/documents/Offender_Orientation_Handbook_English.pdf at p. 74 (last viewed April 14, 2015).

*Id*. (internal citations omitted). The Supreme Court held in *Sandin* that confinement in disciplinary segregation for twenty-three hours and ten minutes per day "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Sandin*, 515 U.S. at 486. The Court focused on the nature of the liberty interest at issue, finding that conditions of disciplinary segregation did not differ significantly from conditions in administrative segregation and protective custody. *Id.*

### 1. Loss of Line Class and Privileges

To the extent petitioner is complaining about a reduction in line class, he fails to state a basis of relief. Generally, a lower classification of line class limits an inmate's ability to earn good time credits, which could have an effect on his eligibility for parole and in turn, on the amount of time he is in custody. Even so, "such speculative, collateral consequences do not create constitutionally protected liberty interests." *Luken v. Scott*, 71 F.3d 192 (5th Cir. 1995)(*citing Meachum v. Fano*, 427 U.S. 215, 229, n. 8 (1976)). "'Prisoners have no protectable property or liberty interest in custodial classifications.'" *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999)(citing *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998)). *See also Malchi v. Thaler*, 211 F.3d 953, 959 (5th Cir. 2000)(holding that timing of inmate's release is too speculative to afford him a constitutionally cognizable claim to the right to a particular time-earning status, which right the Texas legislature has specifically denied creating). Thus, Petitioner cannot make out a habeas corpus claim based on his reduction in line class.

To the extent Petitioner is arguing that his loss of privileges or placement on special cell restriction for thirty days resulted in a constitutional violation, his argument is

without merit because those disciplinary measures did not impose atypical and significant hardship on him in relation to the ordinary incidents of prison life. Accordingly, Petitioner did not suffer the loss of a liberty interest and cannot show the violation of a constitutional right.

### 2. Loss of Good Time

Petitioner lost twenty days of good time. In Texas, some inmates are entitled to early release under a mandatory supervision program in which a prisoner sentenced to the institutional division can serve the remainder of his term outside the prison, not on parole, but under the supervision and control of the pardons and paroles division. *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997)(citing Tex. Code Crim. P. Ann. art. 42.18 § 2(2)). Prisoners earn good time credits which are added to their actual days served in prison to calculate their release date. Tex. Gov't Code Ann. §508.147 (Vernon 2012). The Fifth Circuit has determined that prisoners have a constitutional expectation of early release under the mandatory supervision program and therefore have a liberty interest with respect to their good time credit. *Teague v. Quarterman*, 482 F.3d 769, 777 (5th Cir. 2007).

It is unclear whether Petitioner in this case is entitled to release to mandatory supervision. Petitioner stated that he is eligible for such release in his application (D.E. 1 at 5). However, the Commitment Inquiry attached to the motion for summary judgment shows that Petitioner is not eligible for release to mandatory supervision (D.E. 1 at 5; Ex. A to MSJ, D.E. 15-2 at 3). Despite attaching the Commitment Inquiry to his motion, Respondent did not argue that Petitioner is not entitled to release to mandatory

supervision. Because Petitioner's eligibility for mandatory supervision is not clear from the evidence presented, it will be assumed for purposes of this motion for summary judgment that Petitioner is eligible for release.

Good time credits can only be taken from a prisoner in a manner that comports with due process. The Supreme Court described the process due a prisoner accused of a disciplinary infraction in *Wolff*, 418 U.S. at 564: (1) He must receive written notice of the charges; (2) He must be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals and (3) There must be a written statement by the fact finder as to the evidence relied on and reasons for the decision.

Petitioner in this case received written notice of the charges and the hearing officer made a written record noting the evidence he relied on in finding Petitioner guilty. Petitioner contends that he was not allowed to confront and cross-examine witnesses. However, on the digital recording of the hearing (included in the record at D.E. 18), Petitioner can be heard to say that he did not wish to make a statement in his own defense. Because he did not make a statement, the Disciplinary Hearing Officer did not call the charging officer or any other officer to testify (DHR at 7; D.E. 16-2 at 9). Thus, there were no witnesses for Petitioner to confront or cross-examine.

Petitioner also argues that his counsel substitute was ineffective for failing to object to anything at the hearing. However, even if Petitioner's counsel substitute provided poor representation, an inmate does not have a constitutional right to representation at a disciplinary hearing. *Baxter v. Palmigiano*, 425 U.S. 308, 315 (1976).

It follows that if an inmate does not have a right to counsel at a disciplinary hearing, he does not have a right to effective counsel. Accordingly, petitioner has failed to state a cause of action based on the fact that his counsel substitute was ineffective.

Petitioner was provided the process he was due under *Wolff*. Therefore, summary judgment should be entered for Respondent.

## C. Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Petitioner has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000)(a district court may sua sponte rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. Daniel*, 529 U.S. 473, 484, 120 S.Ct.

10 / 12

1604, 146 L.Ed.2d 542 (2000). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327, 123 S.Ct. at 1034.

A slightly different standard applies when the claims are dismissed on procedural grounds. In that instance, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 120 S.Ct. at 1604, 529 U.S. at 484 (emphasis added).

In Petitioner's case, it is recommended that his cause of action be dismissed both procedurally and, in the alternative, on the merits. If the district court orders that Petitioner's cause of action be dismissed and Petitioner seeks a COA in order to proceed with his case, it is further recommended that the COA be denied because reasonable jurists would not find it debatable that Petitioner's cause of action is unexhausted and procedurally barred and that he did not suffer the loss of a liberty interest following his disciplinary hearing.

## R<small>ECOMMENDATION</small>

Based on the foregoing, it is recommended that Respondent's motion for summary judgment (D.E. 15) be GRANTED and Petitioner's cause of action for habeas corpus

relief be DENIED. It is further recommended that any request for a Certificate of Appealability be DENIED.

Respectfully submitted this 20th day of April, 2015.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

### NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within FOURTEEN (14) DAYS after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).